NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ROSCOE MARQUISE HARPER, *Appellant*.

No. 1 CA-CR 24-0070

FILED 12-17-2024

Appeal from the Superior Court in Maricopa County
No. CR2023-103180-001
The Honorable Kerstin G. LeMaire, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Laila Ikram
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Jennifer M. Perkins and Vice Chief Judge Randall M. Howe joined.

---

**C A T L E T T**, Judge:

**¶1**         A jury convicted Roscoe Marquise Harper ("Harper") of aggravated assault. On appeal, Harper argues the superior court erred by denying his motion for a judgment of acquittal because there was insufficient evidence that he used a dangerous instrument. Because there was sufficient evidence to allow a jury to convict, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**         On January 23, 2023, Harper entered a CVS store where Thomas (we use a pseudonym to protect victim confidentiality) worked as a security manager. Thomas recognized Harper because he had been caught stealing from the store multiple times and often became aggressive after he was asked to leave. Thomas told Harper he was not welcome in the store, but Harper ignored him and continued walking. Thomas followed Harper and again asked him to leave. Harper tried to walk further, but Thomas stepped in front of Harper so he could not continue into the store. Harper then pulled a knife from his pocket and held it roughly two inches from Thomas's face. In response, Thomas withdrew his firearm, held it at his side pointed at the floor, and again told Harper he needed to leave. Harper backed away from Thomas and left.

**¶3**         Thomas called law enforcement to report the incident. Two Phoenix Police officers responded and Harper was arrested a few hours later.

**¶4**         The State charged Harper with aggravated assault under the theory that the knife Harper used was a dangerous instrument. *See* A.R.S. § 13-1204(A)(2). At trial, Thomas recounted the incident to the jury and the State introduced a knife into evidence. The jury viewed the knife and Thomas testified that Harper wielded that knife on the day of the incident. When asked to describe Harper's knife, Thomas said it was "a fairly

common butter knife" with "serrated edges all along the bottom and it comes out to a point" and it had "a very firm handle."

¶5        The State also called the two police officers who responded to the scene.  One officer testified that when Harper was arrested, officers found the knife in his pocket.  He also explained that when the knife was impounded as evidence, it was placed in a box rather than a bag, because it was "sharp and dangerous and [could] hurt somebody."  The second officer testified that at the time of his arrest, Harper denied holding the knife in Thomas's face and stated he pulled the knife, but kept it at his side.  That officer also testified that Harper told him his memory was poor but did not think he pointed the knife at Thomas.

¶6        After the State's case-in-chief, Harper moved for a judgment of acquittal under Arizona Rule of Criminal Procedure 20(a)(1), arguing the State failed to meet its burden of proof.  The State responded that the testimony from Thomas and the two officers, along with the presentation of the knife to the jury, provided sufficient evidence to support a conviction. The superior court found substantial evidence to warrant conviction and denied Harper's motion.

¶7        Harper then presented his case.  Harper testified in his defense and stated that at the time of the incident, he was homeless and carried his own silverware, including a knife, to use when he ate at resource centers.  Harper also testified that he never held the knife to Thomas's face and it remained in his back pocket.  On cross examination, Harper testified that he pulled the knife out of his pocket only as he was leaving the store.

¶8        The jury found Harper guilty of aggravated assault.  The jury also found three aggravating factors, including that the offense was dangerous because it involved "the use of, or threatening exhibition of a knife, a deadly weapon or dangerous instrument."  The court sentenced Harper to 11.25 years in prison.

¶9        Harper timely appealed.  We have jurisdiction.  *See* A.R.S. §§ 12-120.21(A)(1), 13-4031, 13-4033(A).

## DISCUSSION

¶10        Harper challenges the superior court's denial of his motion for judgment of acquittal, arguing there was insufficient evidence from which a jury could conclude that his knife was a dangerous instrument. We view the facts in the light most favorable to sustaining the jury's verdict and resolve all inferences against the defendant, *State v. Klokic*, 219 Ariz. 241, 242

¶ 2 n.1 (App. 2008), but we review the superior court's Rule 20 decision *de novo*, *State v. Thompson*, 252 Ariz. 279, 301 ¶ 86 (2022).

**¶11** Under Rule 20(a)(1), "[a]fter the close of evidence on either side . . . the court must enter a judgment of acquittal on any offense charged in an indictment, information, or complaint if there is no substantial evidence to support a conviction." Substantial evidence is "such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. West*, 226 Ariz. 559, 562 ¶ 16 (2011) (citation and quotation marks omitted). Our role is to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Parker*, 231 Ariz. 391, 407 ¶ 70 (2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "When reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the jury, and the [superior court] has no discretion to enter a judgment of acquittal." *State v. Lee*, 189 Ariz. 590, 603 (1997). We will not reweigh the evidence on appeal. *Id.*

**¶12** Harper was convicted of aggravated assault. To establish this offense, the State had to prove beyond a reasonable doubt that (1) Harper intentionally, knowingly, or recklessly committed an assault, and (2) the assault was aggravated by the use of a deadly weapon or dangerous instrument. A.R.S. §§ 13-1203, 13-1204(A)(2). A "dangerous instrument" is "anything that under the circumstances in which it is . . . threatened to be used is readily capable of causing death or serious physical injury." A.R.S. § 13-105(12). "Serious physical injury" is "physical injury that creates a reasonable risk of death, or that causes serious and permanent disfigurement, serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb." A.R.S. § 13-105(39).

**¶13** For something to be a dangerous instrument, it need not be "inherently dangerous." *State v. Schaffer*, 202 Ariz. 592, 595 ¶ 9 (App. 2002). Instead, "the jury can determine whether the defendant used the object in such a way that it became . . . a dangerous instrument." *Id.* This court has broadly construed the term dangerous instrument. *See State v. Jones*, 248 Ariz. 499, 501 ¶ 9 (App. 2020) (concluding that a dog may be a dangerous instrument); *Schaffer*, 202 Ariz. at 596 ¶¶ 14-19 (concluding that a prosethetic arm may be a dangerous instrument); *State v. Rodriguez*, 251 Ariz. 90, 98 ¶ 25 (App. 2021) (concluding that an iron cord may be a dangerous instrument); *State v. Fatty*, 150 Ariz. 587, 590–91 (App. 1986) (concluding that a cloth may be a dangerous instrument when shoved down a person's throat).

¶14 Harper does not dispute that there was sufficient evidence that he committed an assault; rather, he alleges there was insufficient evidence that the knife was a dangerous instrument because it could not readily cause death or serious injury. We disagree.

¶15 At trial, the parties referred to the knife as a "butter knife." In his briefing to this court, Harper continues to characterize the knife as a "butter knife." The State now claims the label "butter knife" is a misnomer and instead characterizes the knife as just that—a "knife." But how the parties characterize Harper's knife is irrelevant for purposes of reviewing the sufficiency of the evidence. The record on appeal contains neither the knife nor a photo of the knife, so we cannot know whether Harper's or the State's characterization is more accurate. We thus rely on witness testimony in determining whether there was sufficient evidence to send the aggravated assault charge to the jury.

¶16 Thomas testified at trial that the knife had "serrated edges," it "[came] out to a point," and had "a very firm handle." One of the responding officers testified that when Harper's knife was impounded as evidence, it had to be placed in a box rather than a plastic bag because it was "sharp and dangerous and [could] hurt somebody." Thomas also testified that Harper held the knife "roughly two inches" from his face and that he felt at risk of being stabbed. From such close proximity, Harper's serrated and pointed knife was readily capable of causing Thomas serious physical injury. Although the jury, after weighing the evidence, could have found Harper not guilty, the evidence was not so lacking as to require a judgment of acquittal. The trial testimony was sufficient for a jury to find that Harper's knife was a dangerous instrument, and we will not reweigh that evidence on appeal. *See Lee*, 189 Ariz. at 603. The superior court did not err in denying a judgment of acquittal.

**CONCLUSION**

¶17 We affirm Harper's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:
ir